/sIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN VAN SALISBURY, | : | CIVIL ACTION |
| | : | NO. 07-4881 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                December 30, 2008

Plaintiff, John Van Salisbury,[1] and Defendants, the United States of America, and Secretary, United States Department of Commerce/ National Oceanic and Atmospheric Administration ("NOAA"), filed cross motions for summary judgment under Fed. R. Civ. P. 56(b).  (Doc. nos. 5 and 7).  For the reasons that follow, Defendants' motion for summary judgment will be granted (doc. no. 7) and Plaintiff's motion for summary judgment (doc. no. 5) will be denied.

I.  BACKGROUND

Plaintiff brought this action against Defendants, seeking judicial review of the assessment of civil penalties issued against it in a civil administrative proceeding.  NOAA

---

[1] Plaintiff John Van Salisbury filed this action both in his personal capacity and trading as FV Major Expense, a water craft.

charged Plaintiff with violations of the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"), 16 U.S.C. §§ 1801 <u>et seq.</u>  Specifically, these charges allege that Plaintiff illegally removed, damaged, or tampered with fishing gear, and unlawfully stole lobsters contained in fishing gear, located in the Exclusive Economic Zone.[2]  A final administrative decision was rendered which imposed the following: (1) $152,500 civil penalty against Plaintiff; (2) 180-day permit suspension of the vessel's permit; and (3) 180-day suspension of Plaintiff's operator permit.  Plaintiff seeks judicial review of the administrative proceeding under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, arguing that the ALJ's liability determination and imposition of sanctions are unsupported by substantial evidence in the record.  For the reasons that follow, both arguments will be denied.

      A.   <u>Facts Found by ALJ</u>

The ALJ's findings of facts are thoroughly detailed in the ALJ's decision and the Court need not duplicate these

---

[2] Under 50 C.F.R. § 600.10, "Exclusive Economic Zone" is the zone established by Presidential Proclamation 5030, 3 C.F.R. part 22, dated March 10, 1983, and is that area adjacent to the United States which, except where modified to accommodate international boundaries, encompasses all waters from the seaward boundary of each of the coastal states to a line on which each point is 200 nautical miles (370.40 km) from the baseline from which the territorial sea of the United States is measured."

findings here.  Only those facts which are pertinent to Plaintiff's objections are repeated as follows.  NOAA Fisheries and the New Jersey Division of Fish and Wildlife received and documented numerous complaints concerning violence, threats of violence, destruction of property, threats of lobster trap destruction, lobster trap theft, and theft of lobsters from lobster traps.  A large percentage of the complaints identified the Van Salisbury family as responsible for damaging and/or stealing lobsters and lobster gear.[3]

Investigating this potential theft, Special Agents from NOAA Fisheries and Conservation Officers from the New Jersey Division of Fish and Wildlife placed uniquely identified lobsters in lobster traps in an active fishing area known as the "mud hole."  With the assistance of cooperating witnesses, Joseph Horvath and his two sons, on September 20, 2004, 40 American lobsters were marked with unique and/or standard identifiers.[4]

---

[3]   Approximately 30-50 percent of the complaints identified the Van Salisburys as the lobstermen who damaged or stole other lobstermen's gear or lobsters from 2002-2004.  (Doc. no. 5, p. 7 (citing AR-31)).

[4]   Joseph Horvath and his sons were chosen as cooperating witnesses to the investigation for the following reasons: investigators never received complaints about the Horvaths tampering with lobster gear; the Horvaths submitted the majority of the complaints against the Van Salisburys; no other fishermen agreed to cooperate because of fears of retribution by the Van Salisburys; and the Horvaths were willing to cooperate.

Plaintiff highlights that a family feud has existed between the Horvath and Van Salisbury families for many years.

At 12:23 a.m. on September 21, 2004, investigators seeded 13 of the identified lobsters in the Horvath's line 33 trap, located in the mud hole, ensuring that the trap was secured so that the lobsters could not escape.

At 4:30 a.m. on the same date, John Van Salisbury traveled to the mud hold on the F/V Major Expense to engage in lobster fishing. At 5:15 p.m. that day, investigators inspected the F/V Major Expense's catch and uncovered 5 of the 13 lobsters that were seeded in the Horvath's line 33. On September 22, 2004, investigators inspected line 33 and discovered that it had been stolen, tampered with, or removed, and in its place was lobster gear which belong to John Van Salisbury.

B. <u>Magnuson-Stevens Act</u>

The Magnuson-Stevens Act was intended by Congress to protect the nation's coastal fish, the national fishing industry, and dependent coastal economies from the stresses caused by

---

Specifically, Plaintiff notes that "the feud, which involved not only verbal assaults but shootings, arsons, fights and otherwise, had resulted in Federal charges against both members of the Van Salisbury family as well as the Horvath family. Following a major shootout by and between a Horvath vessel and a Van Salisbury vessel, one of the Horvaths had been convicted in Federal Court of a Federal offense in New Jersey directly relating to the shooting and partial paralyzing of one of the Van Salisbury siblings." (Doc. no. 7, p. 3-4).

Transponders were attached to five of the lobsters, identified by a unique serial number that a receiver could locate and identify. (Doc. no. 5, p. 8 (citing AR-31)).

overfishing in the waters adjacent to territorial waters.  16 U.S.C. § 1801(a)(1).  Under the Magnuson-Stevens Act, the United States exercises jurisdiction over all commercial and recreational fishery resources within the 200 mile Exclusive Economic Zone ("EEZ").  Id. at § 1811(a) and 1802(6).  Authority for the enforcement of the Magnuson-Stevens Act is vested in the Secretary of Commerce, as delegated to the Assistant Administrator for Fisheries of the National Marine Fisheries Service of NOAA.

> The Magnuson-Stevens Act provides that it is unlawful for any person to negligently and without authorization remove, damage, or tamper with fishing gear that is owned by another person and is located in the EEZ, or fish contained in such fishing gear.  Id. at 1857(1)(K).  Any person who is found by the Secretary, after notice and an opportunity for a hearing, to have committed a prohibited act may be assessed an administrative civil penalty not to exceed $100,000 per violation or have their fishing permits revoked, suspended, denied, or subjected to conditions or restrictions.  Id. at §§ 1858(a) and (g).  Any person against whom a civil penalty is assessed or a permit sanction imposed may obtain review in the District Court by filing a complaint "within 30 days of the date of such order."  Id. at § 1858(b).

II.  STANDARD OF REVIEW

In determining which party is entitled to summary judgment, judicial review of the Agency's decision is governed by 16 U.S.C. 1858(b), which incorporates the standard of review of the APA, 5 U.S.C. § 706.[5]  Under Section 1858(b), an Agency's findings of fact underlying the civil penalty and permit sanction imposed will not be set aside unless they are found to be unsupported by the evidence.  See Lovgren v. Byrne, 787 F.2d 857, 861-62 (3d Cir. 1986) (appropriate standard of review of ALJ's findings related to alleged violations of regulations issued pursuant to the Act is whether such findings are supported by

---

[5]  With approval of the Court, both parties have filed cross motions for summary judgment.  However, the well rehearsed summary judgment standard, as articulated in Fed. R. Civ. P. 56(c), does not apply because the underlying action is an appeal brought under the substantial evidence standard of the APA.  Frontier Fishing Corp. v. Evans, 429 F. Supp. 2d 316, 322 (D. Ma. 2006); See also Calloway v. Harvey, No. 04-239, 2008 LEXIS 98158, at *12-13 (D.D.C. Dec. 4. 2008)(citing Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006)) ("where the parties request 'review of a final agency action under the APA, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record'").  The district court can employ summary judgment to "decide as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  Calloway, No. 04-239, 2008 LEXIS 98158, at *13 (citing Sierra Club, 459 F. Supp. 2d at 90).

Accordingly, in this case, review at the summary judgment level is a procedural device to bring the matter before the Court.  As a result, the Court need not address each motion separately, as would be the case in 56(c) review.

substantial evidence).[6]  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Citizens Publ'g & Printing Co. v. NLRB</u>, 263 F.3d 224, 232 (3d Cir. 2001).

III. ANALYSIS

      Plaintiff challenges two aspects of the ALJ's decision.  First, Plaintiff argues that ALJ's determination of Plaintiff's liability for violations of the Magnuson-Stevens Act is not supported by substantial evidence.  Second, Plaintiff contends that the financial penalty issued by the ALJ was excessive.  For the reasons that follow, both of Plaintiff arguments will be rejected.

      A.  <u>Liability Under Magnuson-Stevens Act</u>

      Plaintiff contends that there is not substantial evidence to sustain Plaintiff's violation of the Magnuson-Stevens Act because the ALJ did not properly consider testimony pertaining to the long-standing dispute between the Horvath and Van Salisbury families as evidence of the Horvaths' potential corruption of NOAA's investigation.  Specifically, Plaintiff alleges that "members of the Horvath family illegally tampered

---

[6] Notably, judicial review of agency decisions is limited to the record before the agency when it made its decision. <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402 (1971).

7

with the law enforcement operation to seek retribution against the Van Salisburys." AR-31, p. 18.[7] For the reasons that follow, Plaintiff's contention is without merit.

The ALJ's decision recognizes Plaintiff's corruption argument, but notes that "the administrative record contains no evidence of such an occurrence." AR-31, p. 18. In addition, the ALJ states that Plaintiff's version of the facts was contradicted by the Horvaths' testimony. Id. (citing Tr. of Jan. 30, 2007 Hr'g, p. 20, 21, 55, 56, 76, 84, 96, 97, 99, and 100). While, the ALJ acknowledges that Plaintiff presented evidence of "the history of acrimony" between the two families, he ultimately finds "the Horvaths' testimony credible and the [Plaintiff's] testimony not credible." Id. Rejecting Plaintiff's corruption argument, the ALJ states, "the Horvaths all credibly testified that they did not go out to the Mud Hole on September 21, 2004, after their traps were seeded." Id. (citing Tr. of Jan. 30, 2007 Hr'g, p. 20, 21, 55, 56, 76, 84, 96, 97, 99, and 100). In deciphering the conflicting versions of the facts, the ALJ made a credibility determination which substantiated his decision that

---

[7] Plaintiff suggests that the uniquely identified lobsters were found in his possession because one or more of the Horvaths retrieved the seeded, marked lobsters from the Horvath traps and placed the lobsters in Plaintiff's traps. AR-31, p. 18 (citing Tr. of Jan. 30, 2007 Hr'g, p. 43-49; Pl. Brief, p. 2-4; Pl. Reply Brief, p. 2).

Plaintiff violated the Magnuson-Stevens Act.  Upon review of the ALJ's determination and the full record, the Court finds that the ALJ's decision was in fact supported by substantial evidence.  Accordingly, the Court is not in a position to upset the ALJ's credibility determination under this standard of review.

       B.   <u>Sanctions</u>

Plaintiff contends that the financial penalty imposed by the ALJ is excessive and disproportionate to the alleged wrongful conduct.  Substantiating this argument, Plaintiff argues that the $152,000 sanction issued by the ALJ is excessive when only five lobsters, "with a market value of approximately $56.00," are at issue.  Plaintiff argues that there must be some proportionality between the alleged wrongdoing and the punishment.  <u>United States v. Bajakajian</u>, 524 U.S. 321, 337 (1998).  For the following reasons, the Court rejects Plaintiff's argument and concludes that the ALJ's sanctions are supported by substantial evidence in the record.

The ALJ discusses the factors that he considered in the determination of Plaintiff's sanctions in detail.  Under 15 C.F.R. § 904.128(a), "[f]actors to be taken into account in assessing a penalty . . . may include the nature, circumstances, extent, and gravity of the alleged violation; the respondent's

degree of culpability, any history of prior offenses, and ability to pay; and such other matters as justice may require." Applying this provision to the instant case, the ALJ identifies the following facts as influential in his sanctions determination: (1) the 15 year history of conflict resulting in violence among lobstermen caused by theft of lobster gear, and related incidents, in the Exclusive Economic Zone of the New Jersey coast; (2) the resulting economic loss to lobstermen in the area; and (3) the letter issued by NOAA Fisheries and the Coast Guard to all lobster permit holders, reminding lobstermen of the severity of lobster/ lobster gear theft and/or tampering and the resulting penalties. AR-31, p. 19.

Importantly, the ALJ acknowledges Plaintiff's argument but notes that "the value of the [five] lobsters and traps is only a small factor when considering the value of resources associated with this investigation in a hostile and volatile climate." Id. The ALJ considered Plaintiff's culpability and concluded that Plaintiff was "actually aware" of the law against tampering with another fisherman's gear or catch, but nonetheless intentionally chose to commit the violations. Id.

Notably, the sanctions imposed by the ALJ are within the limitations of the Magnuson-Stevens Act, and less severe than

other possible sanctions under the Act.[8] In addition, as Defendant highlights in its motion for summary judgment (doc. no. 5), the penalties imposed by the ALJ are consistent with past assessments for other violations.[9] Under these circumstances, the Court finds that the sanctions imposed by the ALJ were in fact supported by substantial evidence.

For the foregoing reasons, the Court finds that the ALJ's determination of Plaintiff's liability under the Magnuson-

---

[8] The Magnuson-Stevens Act authorizes the civil forfeiture of "any fishing vessel (including its fishing gear, furniture, appurtenances, stores, and cargo) used, and any fish (or the fair market value thereof) taken or retained, in any manner, in connection with or as a result of the commission of any act prohibited by [the Act]." 16 U.S.C. § 1860.

In addition, the Magnuson-Stevens Act permits a civil penalty of up to $100,000 per violation. 16 U.S.C. § 1858 (a). Pursuant to the Debt Collection Improvement Act, this amount was adjusted upward to inflation to $120,000. 65 Fed. Reg. 65260 (Nov. 1, 2000).

[9] For example, in Duckworth v. United States, the United States District Court for the District of Rhode Island, found that substantial evidence existed in the record to support the ALJ's imposition of a $50,000 penalty for possessing approximately 1,500 pounds of monkfish without a federal permit. No. 05-145S, 2006 U.S. Dist. LEXIS 13859, at *16-17 (D. R.I. March 22, 2006). See also In re Clarke A. Reposa, Sr., 2003 WL 21734021 and 22072987 (NOAA) (NOAA imposed $45,000 against corporation solely owned by Reposa, Sr.; $40,000 against Reposa in his individual capacity; and 90-day vessel and operator permit sanctions against Reposa and his fishing vessel for landing approximately 1,500 pounds of illegal fish, making false oral statements/ reports in attempt to cover up violations); In re Atlantic Spray Corp., 1997 WL 1402870 (NOAA) (NOAA issued civil penalties totaling $4.3 million, 5 vessel permit revocations, and a dealer permit revocation against two brothers and their closely held corporation for 181 violations of core conservation measures).

Stevens Act, and the resulting imposition of sanctions were supported by substantial evidence in the administrative record. Accordingly, Defendants' Motion for Summary Judgment (doc. no. 5) is granted, and Plaintiff's Motion for Summary Judgment (doc. no. 7) is denied.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN VAN SALISBURY, | : | CIVIL ACTION |
| | : | NO. 07-4881 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

**AND NOW,** this **30th** day of **December 2008,** upon consideration of the parties' cross motions for summary judgment (doc. nos. 5, 7) and response thereto (doc. no. 8), it is hereby **ORDERED** that:

1. Defendants' motion for summary judgment (doc. no. 5) is **GRANTED;** and

2. Plaintiff's motion for summary judgment (doc. no. 7) is **DENIED.**

**IT IS FURTHER ORDERED** that the case shall be marked as **CLOSED.**

**AND IT IS SO ORDERED.**

/s Eduardo Robreno
------
**EDUARDO C. ROBRENO, J.**

13

14

15